[Civ. No. 3940. Second Appellate District, Division One.—July 20, 1923.]

## WILL J. REID, Appellant, v. C. E. HOLCOMB et al., Respondents.

[1] MONEY HAD AND RECEIVED—STOCK SUBSCRIPTION AGREEMENT—FINDINGS—EVIDENCE.—In this action to recover money paid on a contract of subscription for stock of a proposed California corporation, the findings of the trial court to the effect that plaintiff did not demand of defendants the said stock, that defendants did not fail to deliver the stock provided in the agreement with plaintiff, that it was not true that plaintiff received nothing in return for the money paid to defendant, and that it was not true that plaintiff demanded return of said money, were not supported by the evidence, which showed that plaintiff at first demanded the delivery of the stock or the return of his money, and later, by letter forwarded by registered mail, demanded the return of his money, that defendants organized an Arizona corporation, and not a California corporation, and that the only stock certificate that had been issued in plaintiff's name but which was not accepted by plaintiff, was one in such Arizona corporation and was for shares of a lesser aggregate par value than called for by plaintiff's subscription agreement.

[2] ID.—LACHES—EVIDENCE.—Plaintiff's original alternative demands for the delivery of the stock or the return of his money having been predicated upon certain explanations for the delay in incorporating made by defendants' agent, coupled with the repeated promises of the latter to see that plaintiff got either his money or the stock, and plaintiff's complaint to recover the money having been brought within about ten months after his final demand for the return of his money, and there being no facts or circumstances attending the delay which operated to the injury of defendants, the action was not barred by laches.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Reversed.

The facts are stated in the opinion of the court.

F. A. Knight for Appellant.

Earle M. Daniels and Julius V. Patrosso for Respondents.

CONREY, P. J.—Action to recover a sum of money paid by plaintiff on a contract of subscription for stock of a pro-

posed corporation; plaintiff alleging, in substance that the consideration for said payment has failed. The second count of the complaint is the common count for money had and received. Both counts relate to the same transaction. The plaintiff appeals from the judgment in favor of the defendants.

The findings, in conformity with the first two paragraphs of the complaint, state that on or about November 5, 1919, the plaintiff entered into an agreement with the defendants wherein and whereby the plaintiff agreed to buy from the defendants, and the defendants agreed to sell to the plaintiff, five hundred shares, of the par value of ten dollars each, of the common capital stock of a proposed corporation to be organized under the laws of the state of California, and the plaintiff then paid to the defendants the sum of one thousand dollars for said stock; that a copy of said contract is attached to the complaint and marked Exhibit "A." Said Exhibit "A," under the title "Subscription Contract," is a document addressed to the defendants as "Syndicate Managers, Paul Getty Oil Corporation, 1004–8 Garland Building, Los Angeles, California." It bore the signature of "Will J. Reid, Subscriber," and was "Countersigned by W. M. Strickler, Syndicate Manager." The material parts of it read as follows:

"I hereby subscribe for one units, or shares of the preorganization syndicate being organized by you to underwrite a block of 150,000 shares of the capital stock of the proposed Paul Getty Oil Corporation, to be incorporated under the laws of the state of California, and agree to pay to C. E. Holcomb, fiscal agent of the syndicate, therefor, the sum of $1000.00 per unit, or share or a total of $1,000.00, payable as follows:

"Cash upon the signing of this subscription contract and upon the following terms and conditions; receipt of the above described payments being hereby acknowledged.

"1. That all payments made on this subscription and on similar subscriptions, shall be held by C. E. Holcomb, to be used as directed by the aforesaid syndicate managers.

"2. Each syndicate unit, or share, shall be exchangeable, upon demand for 500 shares of a par value of $10.00 each of the common capital stock of the Paul Getty Oil Corporation, the total par value of said shares being $5000.00. Delivery

of said shares shall be made as soon as the proposed company is duly incorporated and organized according to law, which it is hereby understood and agreed shall be about the first day of December, 1919, certificate or certificates of stock to be issued in my name, or to my order without transfer charges.

. . .

"I hereby authorize and instruct the above-named syndicate managers to make payments to J. Paul Getty, the Paul Getty Oil Corporation, or the Getty Oil Company, in such amounts and at such times as they deem fit.

"This subscription contract is not valid or binding unless accepted and countersigned by one of the syndicate managers.

"Dated the 5th day of November, 1919."

[1] Appellant contends that there is no evidence to sustain certain of the findings, which, as to the matters here in controversy, are, in substance, as follows: The court found that the plaintiff did not, on the first day of December, 1919, and on the seventeenth day of May, 1920, and at other times between said dates, demand of the defendants the said stock; that the defendants have not failed and refused to deliver to plaintiff the said shares of stock of said corporation provided to be delivered in said agreement or any stock; that it is not true that the plaintiff has not received certificates for said shares of stock or any part thereof; that it is not true that on or about the seventeenth day of May, 1920, the plaintiff had received nothing for his money, and demanded of the defendants the return of the one thousand dollars paid to them; and it is not true that thereafter, on the thirty-first day of July, 1920, the plaintiff demanded of the defendants, and each of them, the return of said one thousand dollars; that the plaintiff did demand the return of said sum on or about the first day of February, 1921; that the plaintiff has been guilty of laches and unreasonable delay in bringing this action; that the plaintiff is precluded or estopped from suing on the cause of action set forth in the complaint for the reason that, on or about the twelfth day of May, 1920, two thousand five hundred shares, of the par value of one dollar per share, of the Getty Oil Company, a corporation organized in pursuance to the terms and conditions set forth in the contract attached to the complaint, were issued and tendered to the plaintiff, and that said Getty Oil Company was organized according to law on or about April 17th, 1920.

It is conceded that the defendants never organized a corporation under the laws of California. It does appear from the evidence that on the seventeenth day of April, 1920, "the Getty Oil Company" was incorporated in Arizona under the laws of that state, with an authorized capital stock of five million dollars in one dollar shares. According to the stock ledger of that corporation, on May 6, 1920, a stock certificate of two thousand five hundred shares was "drawn" in favor of Will J. Reid. At the time of the trial that certificate was in possession of the secretary of the corporation, who had received it from his predecessor in office, who, in turn, had received it from defendant W. M. Strickler with a letter of Strickler to the company, dated July 28, 1920, wherein he stated that he was returning the certificate in accordance with his understanding with J. Paul Getty. It appears that said certificate of stock within two or three days after its date was taken by Mr. Strickler to the office of the plaintiff at Long Beach. The plaintiff was not there at that time, and Strickler took it back to Los Angeles and thereafter returned it to the Getty Oil Company. The fact that Strickler, while at plaintiff's office in Long Beach, told Mr. Hancock, "a business associate" of plaintiff, that he had brought down to the plaintiff the stock from the Getty Oil Company, and that Mr. Hancock said that the plaintiff wasn't going to take it, does not tend to prove either a tender of the certificate or an excuse for nondelivery, and there is no evidence that Hancock was authorized to represent plaintiff.

Mr. Strickler represented the syndicate in obtaining the plaintiff's subscription. Strickler testified that in February, 1920, the plaintiff asked him about the progress of the incorporation; to which he replied that the delay had occurred because "Mr. Getty and Mr. Gesell, the principals in the case, had not been able to decide upon a capitalization"; that again in March, 1920, the plaintiff said that if he didn't get his stock, he would want his money back; to which Strickler replied that he would see that the plaintiff got either his money or the stock; that he had a third conversation with the plaintiff in April, 1920; that he then told the plaintiff that Mr. Getty had either gone or was contemplating a trip to Europe; "that I told him that I thought it was impossible to do anything at that time with Mr. Getty until his return. But I suggested that he get in touch with Mr. Gesell, and that

I would also see Mr. Gesell and see if something couldn't be done to either get him his money or his stock. . . . I told him that I would get him either his money or his stock''; that his next conversation with the plaintiff was in July, 1920. "Of course at that time Mr. Reid had—I mean the company had been incorporated and I knew that Mr. Reid was not going to accept his stock. So then I told him I would try to get him his money back, when I knew he didn't want to accept the stock.''

It thus appears that the findings are correct to this extent, that the plaintiff did not, on or before the seventeenth day of May, 1920, in any of said conversations, demand the shares of stock, or demand the return of his money, except in the alternative terms stated. On the other hand, however, he did make that alternative demand, and the replies which he received from Strickler evidently caused the plaintiff to postpone a more positive and specific demand, at least until May 17, 1920. There is no evidence to sustain the finding that the defendants have not failed to deliver the said shares of stock, or the finding that it is not true that the plaintiff has not received certificates for said shares of stock. In fact, the corporation provided for in the agreement, to wit, a California corporation, never has existed. The plaintiff did not know that an Arizona corporation was being substituted for the proposed California corporation, and he cannot be held to have waived his right to object to such substitution. The evidence leaves no doubt whatever that on May 17, 1920, the plaintiff addressed to the defendants a letter in which he referred to the agreement of November 5th, and said, referring to the proposed corporation: "This corporation has not been formed and I hereby demand the immediate return of the one thousand dollars paid to you by me last November.'' This letter was sent as a registered letter to the office of the defendants, where, on May 18, 1920, receipt for it was given in their name by the office boy of the defendants. Three of the defendants testified, each for himself, that he never received said letter. The other defendant, Mr. Gesell, being asked if he had seen the letter before, replied thus: "If I have I don't remember it; I don't remember ever seeing it; so many papers flying around in connection with that oil business.'' We think that reasonably it may be assumed to be within the scope

of the duties of an "office boy" to receive for his employers the letters delivered at their office for them, and, in the absence of evidence to the contrary, that letters properly stamped and addressed have been delivered. Subject to contradiction, if any there be, it is to be presumed "that the ordinary course of business has been followed," and "that a letter duly directed and mailed was received in the regular course of the mail." (Code Civ. Proc., sec. 1963, subds. 20 and 24.) The mere fact that Mr. Gesell, under the circumstances stated by him, did not remember receiving the letter is no evidence that he did not receive it. His answer, as quoted above, is not a denial, but is in effect that, for the reason stated by him, if he had received it, he would not remember the fact. Our conclusion is that the letter of May 17, 1920, was delivered to the defendants in due course of mail, and that the evidence does not sustain the finding that the plaintiff did not, on the seventeenth day of May, 1920, demand of defendants the return of said sum of one thousand dollars. It is also clear that he has never received the consideration, or any part of the consideration, for said money.

[2] This action was commenced by complaint filed on the seventeenth day of March, 1921. We are satisfied that the judgment should be reversed, unless the defense of laches is applicable to the case and unless it be true, as found by the court, that the plaintiff has been guilty of laches and unreasonable delay in bringing the action. Upon the facts as they appear in the record, we are of the opinion that this defense cannot prevail. This is so because there are not any facts or circumstances attending the delay which have operated to the injury of the defendants. (*Meigs* v. *Pinkham*, 159 Cal. 104, 111 [112 Pac. 883]; *McGibbon* v. *Schmidt*, 172 Cal. 74 [155 Pac. 460].) The defense of laches was not pleaded except as follows: Defendants alleged "that plaintiff has been guilty of laches and unreasonable delay in bringing this action." It was not alleged, and it is not established by any of the proven facts, that the defendants were in any way injured or at all affected with respect to their rights or with respect to their obligations to the plaintiff by reason of such delay as there was in the matter of filing a complaint in the action. If the plaintiff had known that the corporation organized by

the defendants in purported compliance with his contract was in fact an Arizona corporation, and not a corporation organized under the laws of California, and if with knowledge of those facts and with knowledge that shares of stock had been placed in his name on the books of the company, he had exercised rights of ownership thereof and had postponed his rescission of the contract, or his demand for the return of the money, in view of a possible increase in value of the stock, there might be some substance to a defense based upon those facts. But the situation thus assumed does not exist in this case.

The judgment is reversed.

Houser, J., and Curtis, J., concurred.