248 S.W.2d 38 (1952)
SMOOT
v.
FISCHER et al.
No. 28235.
St. Louis Court of Appeals. Missouri.
April 15, 1952.
*40 Carter, Bull & McNulty, of St Louis, and Doris J. Banta, of St. Louis, of counsel, for appellant.
Louis J. Portner and Milford T. English, both of St. Louis, for respondent.
BENNICK, Presiding Judge.
This is an action for damages for personal injuries sustained by plaintiff, Ruth Smoot, as a consequence of an automobile collision which occurred on the MacArthur Bridge which spans the Mississippi River between East St. Louis, Illinois, and St. Louis, Missouri.
One of the colliding automobiles was driven by defendant Virgil Fischer, and the other by defendant Charles Aldridge, Jr. Plaintiff was riding as a guest in the automobile driven by defendant Fischer.
Tried to a jury in the Circuit Court of the City of St. Louis, Missouri, a verdict was returned in favor of plaintiff, and against both defendants, in the sum of $3,500. Defendant Fischer filed his motion asking the court to enter judgment in his favor in accordance with his prior motion for a directed verdict, or, in the alternative, to grant him a new trial. The court overruled the motion, whereupon he gave notice of appeal from the final judgment, and by proper successive steps has caused the case to be transferred to this court for our review.
Defendant Aldridge, while present at the trial, was not represented by counsel, and apparently took no steps on his own behalf to secure a review of the adverse judgment.
The accident occurred about four o'clock in the morning on March 13, 1948. Plaintiff, a young woman eighteen years of age, was riding in the front seat of the automobile with defendant Fischer with whom she had been keeping company with some regularity, and another young couple were seated in the rear. The four of them had attended a social function in East St. Louis, Illinois, and were traveling westwardly across the bridge on their way back to their respective homes in St. Louis, Missouri, when Fischer's automobile collided with the automobile being driven eastwardly across the bridge by defendant Aldridge en route from St. Louis, Missouri, to the Scott Field air base in Illinois, where he was stationed as a member of the armed forces.
The chief question in the case is whether Fischer, in making his defense to plaintiff's claim, was entitled to assert and rely upon the Illinois guest statute, Ill.R.S. 1949, Chap. 95½, Sec. 58a, which provides that no person riding in a motor vehicle as a guest, without payment for such ride, shall have a cause of action for damages against the driver or operator of such motor vehicle for injury in case of accident, unless such accident shall have been caused by willful and wanton misconduct of the driver or operator contributing to the injury for which the action is brought.
Plaintiff was concededly a nonpaying guest in Fischer's automobile at the time of the accident, so that if the statute in question applies to the case, she would be precluded from holding Fischer to account in an action based on simple negligence. Whether such statute applies necessarily depends, of course, upon whether her cause of action is governed by the law of Illinois, even though prosecuted in the State of Missouri which has no such guest statute of its own.
The trial court refused to entertain such defense upon the theory that even if it could be shown that the accident occurred at a point east of the middle of the main channel of the Mississippi River and therefore within the territorial limits of the State of Illinois, it was nonetheless within the concurrent jurisdiction of the State of Missouri, with the consequence that in the prosecution of an action brought in a Missouri court exercising such concurrent jurisdiction, the case was to be governed exclusively *41 by the law of Missouri, and not by the law of Illinois, including that state's guest statute which Fischer was undertaking to apply.
In situations where a watercourse forms a common boundary between two states, the question of jurisdiction over such watercourse and things transpiring upon it has always been a matter of considerable concern. Generally speaking, the jurisdiction of a state is merely coextensive with its boundaries, so that where a stream forms the boundary between two states, neither would have jurisdiction beyond the center of the stream, or beyond whatever may constitute the actual dividing line, in the absence of some lawful agreement or provision extending each state's jurisdiction over the entire stream. But because of the practical difficulty to be encountered in determining whether a particular thing in controversy occurred on one side or the other of the exact dividing line between the two states, it has been found expedient to extend each state's jurisdiction over the whole of such a stream; and out of all this has evolved the concept of concurrent jurisdiction on the part of adjoining states with respect to a stream or watercourse which forms the common boundary between them.
In the case of our own state, the matter was taken care of by the Congress in Section 2 of the Enabling Act, where it was provided that the eastern boundary of the state should be the middle of the main channel of the Mississippi River, and that the state should have concurrent jurisdiction "on the river Mississippi" and every other river bordering on the state so far as the said rivers should form a common boundary to the state and any other state or states then or thereafter to be formed. Chap. 22, 3 U.S.Stat. 545, R.S.Mo.1949, p. 36, 1 V. A.M.S. p. 63.
It is to be understood that in conferring concurrent jurisdiction on this state as to acts or transactions occurring on the Mississippi, it was not intended that there should be concurrent sovereignty or dominion on the river. On the contrary, in the case of matters not included in the proper concept of concurrent jurisdiction, each of the adjoining states retains its exclusive control up to the limit of its actual boundary, entirely free from interference by the other. The term "jurisdiction" relates to matters at least in some way connected with the use of the water for navigable purposes or in some legitimate sense to be regarded as on the water; and what is meant by the grant of concurrent jurisdiction is merely that transactions occurring anywhere on the water, which are the proper subject of concurrent jurisdiction, may lawfully be dealt with by the courts of either of the adjoining states according to its own laws as fully and completely as those occurring elsewhere within its borders. In other words, the state acquiring jurisdiction acts by, and is limited to the enforcement of, its own laws and not the laws of the adjoining state; but where it once assumes such jurisdiction, it retains exclusive jurisdiction until the same is relinquished. Sanders v. St. Louis & N. O. Anchor Line, 97 Mo. 26, 10 S.W. 595, 3 L.R.A. 390; 59 C.J. 24-26; 49 Am.Jur., States, Territories, and Dependencies, Sec. 24.
In this case the pleading and proof disclosed no more than that the accident occurred at a point on the bridge near the toll collector's station on the eastern side of the bridge. Upon plaintiff's objection the court denied Fischer's offer of proof that the point of the accident was east of the middle of the main channel of the river and therefore within the territorial limits of the State of Illinois. It seems to be conceded, however, that the point of the accident was in any event directly above the water, and not on an approach extending over dry land.
The question of whether the case is embraced within this state's concurrent jurisdiction is therefore reduced to one of whether the accident, having occurred, not on the water itself, but on the roadway of the bridge at a point directly above the water, may be said to have occurred "on the river Mississippi" within the intent of Congress as expressed in the Enabling Act prescribing the conditions upon which Missouri should be admitted into the Union.
*42 Whatever difficulty there is grows out of defendant's reliance upon the well-settled rule as announced in numerous authorities that the grant of concurrent jurisdiction relates only to things which are in some legitimate sense to be regarded as on the water (a distinction we have already pointed out), and does not extend to permanent structures attached to the river bed or the banks, and therefore within the boundaries of one or the other of the adjoining states. In other words, it is the water itself, and the use of it for navigation, interstate traffic, and the like, with which the doctrine of concurrent jurisdiction is concerned, and not the land under the water, or things of a permanent nature erected in or over the water. Whenever such physical objects themselves, or rights incident thereto, are directly involved in the controversy, they are under the exclusive jurisdiction of the state within whose boundaries the objects are located. 59 C.J. 27; 49 Am.Jur., States, Territories, and Dependencies, Sec. 24.
But here there is no matter in dispute regarding the MacArthur Bridge itself as a permanent structure connecting the two states on opposite sides of the river. Instead the only question is whether the State of Missouri has concurrent jurisdiction over persons and vehicles using the bridge as a means of transportation across the river. If the parties to the case had been crossing the river on a ferryboat or steamer and an accident had occurred giving rise to ligitation, there would be no question of the application of this state's concurrent jurisdiction. Sanders v. St. Louis & N. O. Anchor Line, supra. Considering the reasons underlying the grant of concurrent jurisdiction and the evils to be avoided by its existence, it should make no difference that the means of transportation employed in this case was a bridge rather than a ferryboat or steamer; and it seems to be entirely clear by the common sense of the matter as well as by the persuasive force of pertinent cases from other states that the case at bar is within this state's concurrent jurisdiction, and is to be determined according to the laws of Missouri and not by the laws of Illinois.
The lower court was therefore correct in all its several rulings rejecting a defense based upon the provisions of the Illinois guest statute. State v. George, 60 Minn. 503, 63 N.W. 100; Commonwealth v. Shaw, 8 Pa.Dist. 509, 22 Pa.C.C. 414; 59 C.J. 27.
Fischer insists, however, that quite aside from any question of what law should apply, there was in any event no evidence to support the submission of the case against him upon the theory of negligence in failing to keep a lookout for approaching automobiles, and in failing to swerve his automobile so as to avoid a collision with the automobile being driven by defendant Aldridge. These were the two predicates of liability submitted by instructions Nos. 1 and 2; and they are therefore the only predicates of liability to be considered upon the question of whether there was a case for the jury, since all other assignments are to be taken as abandoned. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91; Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663.
The evidence as to how the accident occurred was not very greatly in dispute.
The ground was covered with from two to four inches of snow, and it was still snowing at the time of the accident. Nevertheless Fischer was able to see for as much as three hundred feet ahead with his windshield wipers working. According to his own testimony, his speed was from fifteen to twenty miles an hour; according to Aldridge, it was around thirty miles an hour.
Taking the evidence as it tends most strongly to support plaintiff's right of recovery against Fischer, it must be accepted that he was driving with the left side of his automobile slightly over into an eastbound lane, and with the right side of his automobile out as much as three to five feet from the curb. Though he possessed visibility for three hundred feet ahead, he did not see the Aldridge car until it pulled out fifteen feet ahead of him, and then, by his own admission, he "didn't do anything", notwithstanding the space of from three to five feet between his car and the curb into which he might have swerved. *43 As it was, the collision was only between the left front corners of the cars.
There was sufficient evidence to justify the submission of the case upon the theories of failure to keep a lookout and failure to swerve, and the insistence to the contrary must be rejected.
It follows that the judgment rendered by the circuit court should be affirmed, and it is so ordered.
ANDERSON and RUDDY, JJ., concur.