Donald HAIRE, Plaintiff-Respondent,

v.

Gilbert STAGNER and Dodds Truck Line,
Inc., Defendants-Appellants.

No. 7973.

Springfield Court of Appeals.
Missouri.

April 6, 1962.

L. Clark McNeill, Salem, for defendants-appellants.

Ford & Ford, Kennett, Dorman L. Steelman, David C. Harrison, Salem, for plaintiff-respondent.

STONE, Judge.

This is an appeal by defendants, Dodds Truck Line, Inc. (hereinafter referred to as Dodds), and Gilbert Stagner, Dodds' driver, from a judgment of $2,250 entered upon a jury verdict in favor of plaintiff, Donald Haire, for personal injuries sustained by him on September 16, 1957, at Steelville, Missouri. Plaintiff, then twenty-seven years of age, who had been "in the construction business" for eight years, was employed by Huffman Brothers, the general contractor, as superintendent on a construction project to build a new elementary school building in Steelville.

On the day of accident, a tractor-trailer unit owned by Dodds and driven by defendant Stagner came to the site of the construction project with six cartons of building material consigned to the general contractor. Each carton contained four or five large sheets of heavy one-inch paneling, weighed about 450 to 500 pounds, was approximately eight feet in length, four feet in height, and six inches in width, and "was crated all around, solid crating," with 1" x 6" or 1" x 8" boards. These six cartons, the only cargo remaining on the Dodds trailer at the time, were standing on edge (i. e., on their six-inch width), side by side on a raised platform "in the very front of the trailer." As the cartons stood lengthwise of the trailer and "stacked" against one side of it, they occupied about one-third of the width of the trailer bed and were braced in position by 1" x 4" boards between the cartons and the opposite side of the trailer.

Defendant Stagner said (and his was the only testimony on this subject) that Dodds' over-the-road trucks, such as the one making this delivery, never carried helpers or special unloading equipment, and that "the custom up and down the line" was for the consignee to furnish such equipment and men as might be needed for unloading, all of which was, so defendants asserted, in consonance with "Item No. 40, subparagraph b," of the "Interstate Commerce Commission Rules for Midwest Motor Freight Bureau" said to require that the consignor or the consignee, as the case may be, shall furnish needed equipment and men and shall assume responsibility for safe loading and unloading of heavy articles. But, although this rule was offered and received in evidence as a defendants' exhibit, none of the exhibits were included in or filed with the transcript; and furthermore, as plaintiff's counsel appropriately point out, nothing in the record before us would justify a finding that this rule was applicable either generally to Dodds' trucking operation or specifically on the occasion under consideration. Hence, we have considered the case without regard to "Item No. 40."

However, defendant Stagner was alone on the truck and obviously could not have moved or unloaded the six heavy cartons without assistance. When Dodds had delivered freight to the same construction project on previous dates, there invariably had been only one man on the truck and, as plaintiff stated, "if it was too heavy for him we would always have to help him unload it." Thus, although we find no evidence that Stagner *expressly* requested help in unloading on the date of accident, it appears to have been taken for granted that plaintiff would assist as, in fact, he forthwith undertook to do. Both plaintiff and Stagner climbed into the trailer and, as each testified, *both of them* removed the bracing between the upright cartons and the opposite side of the trailer. Then, in plaintiff's words, "we attempted to slide them (the cartons) out the back end of the truck, just on the bed of the truck, (but) it was more than two of us could do. Someone suggested to bring a dolly . . which the school had . . . and next we put the dolly under it (a carton) and rolled it to the

back of the truck," where the carton was placed on skids (timbers) laid from the ground to the trailer bed and was moved down. Two workmen on the construction project, Grayson and Gregory by name, who were employees of the general contractor and were directed by plaintiff to help in unloading, remained on the ground at the rear of the truck.

Three of the six cartons were unloaded without incident, before the accident in suit occurred while plaintiff and Stagner were moving the fourth carton. Plaintiff, then on the raised platform behind the fourth carton and facing the rear of the trailer, was pushing on that carton while Stagner, on the other end, was pulling on it. They were moving the carton, in fact already had moved it for a distance of "about half of the length of the carton," but the carton was still on the raised platform when, as plaintiff said, "the remaining two cartons tilted, knocking the fourth one we were pulling on out of my hands and it fell onto my legs . . . I tried to catch it, but it was too much weight for me to hold. I jumped back as far as I could, but I hit the side of the truck." In his futile attempt to hold the carton upright, plaintiff apparently moved around to the side because, when he went down in "kind of a sitting position," his back was against the side of the truck opposite that by which the cartons had been stacked, and he was off the raised platform and on the trailer bed itself. No one offered any explanation as to the cause of this unique accident. Plaintiff agreed that Stagner "was about six feet away" from the two cartons which tilted, insisted that neither he (plaintiff) nor Stagner had hit those cartons, and admitted that "I don't know what caused them to fall." Neither Grayson nor Gregory, both of whom testified, saw the accident, and nothing in Stagner's testimony indicated that he had any knowledge of the cause of accident.

The first two "points" in defendants'-appellants' brief assert that "the burden is on plaintiff suing for negligent injury to establish the cause of the accident" and that "plaintiff had the duty of furnishing necessary equipment for unloading [P.S.C. Rules (Tr. 53)]; therefore, by directing the unloading, he assumed the risk." In language as explicit and demanding as it is plain and unambiguous, sub-division (a) (3) of Rule 83.05, V.A.M.R., directs that "(t)he points relied on . . . shall show what actions or rulings of the Court are sought to be reviewed and wherein and why they are claimed to be erroneous"; and, that there may be no reason or opportunity for misunderstanding on the part of those who make a serious and purposeful effort to follow the rule, sub-division (e) repeats the same direction and adds the blunt and unmistakable warning that "(s)etting out only abstract statements of law without showing how they are related to any action or ruling of the Court is not a compliance with this rule." As our brethren have pointed out, these provisions "are clear and simple and easily followed upon a cursory examination" [Onka· v. Butkovich, Mo. App., 294 S.W.2d 357, 359] and "(o)bedience . . . calls for no cryptic or unique legal discernment or technique." White v. Nelson, Mo.App., 283 S.W.2d 926, 928. And, as a multitude of recent cases [1] demonstrate, the quoted "points" in instant defendants' brief are utterly insufficient to preserve and present anything for appellate review, and we well might limit our consideration to the last "point" reflecting a

1. Hardy v. McNary, Mo., 351 S.W.2d 17, 20(4); Magenheim v. Board of Education of School Dist. of Riverview Gardens, Mo., 340 S.W.2d 619, 621(3); Walker v. Thompson, Mo., 338 S.W.2d 114, 116–117(6, 7); Turner v. Calvert, Mo., 315 S.W.2d 118, 120(2); Repple v. East Texas Motor Freight Lines, Mo., 289 S.W.2d 109, 111(2, 3); Marlo Coil Corp. v. Grand Park Corp., Mo.App., 348 S.W.2d 610, 612–613(4, 5); State ex rel. Sisson v. Felker, Mo.App., 336 S.W.2d 419, 420(1); Wildermuth v. Fred Medart Mfg. Co., Mo.App., 330 S.W.2d 126, 128 (2); Beeler v. Board of Adjustment of City of Joplin, Mo.App., 298 S.W.2d 481.

properly-formulated assignment directed to an instruction. But, plaintiff-respondent has made no complaint about defendants'-appellants' brief; and, from the "argument" therein, we gather that defendants' principal contention is that plaintiff did not make a submissible case, that defendants' motion for a directed verdict at the close of all of the evidence should have been sustained, and that, failing so to do, the trial court should have set aside the judgment for plaintiff and entered judgment for defendants in accordance with their after-trial motion [Rule 72.02, V.A.M.R.; V.A.M.S. § 510.290], erroneously designated as a motion for judgment notwithstanding the verdict. Rule 81.01, V.A.M.R.; V.A.M.S. § 510.380. Being convinced that defendants' contention is meritorious, we have concluded that, in the interest of justice, we should consider and rule it. Clemons v. Becker, Mo., 283 S.W.2d 449, 452.

Plaintiff's petition charged specific negligence in four particulars, but the only negligence submitted in plaintiff's sole verdict-directing instruction was "that defendants failed to use ordinary care in that they created a dangerous condition in said vehicle by removing said bracing and failed to warn plaintiff of the dangerous condition existing when bracing was removed." By submitting on the quoted charge of negligence, plaintiff abandoned all others;[2] and, in determining the sufficiency of the evidence to make a prima facie case, we must confine ourselves to the sole ground submitted.[3] Plaintiff's submission required, and was predicated upon, a preliminary finding that he "was in and upon said (tractor-trailer) unit by invitation, either express or implied, of defendants"; and plaintiff's counsel insist that this is "an analogous case to a business invitee on premises of the owner" and that the legal status of their client at the time of accident was that of "an invitee." The case having been submitted, both in the trial court and on appeal, on this theory deliberately adopted by capable counsel, our review must be upon the same theory. Welch v. McNeely, Mo., 269 S.W.2d 871, 875(3), and cases there cited. Accordingly, we employ the legal principles applicable in inviter-business invitee situations in determining whether defendants owed to plaintiff a duty in the only respect submitted (i. e., to warn of the allegedly dangerous condition created by removal of the bracing) and, if so, whether defendants breached such duty.

The reports abound with Missouri cases[4] approving the principle formulated in 2 Restatement, Torts, § 343, p. 938, which imposes liability upon an inviter for bodily

2. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, 93(1); Crandall v. McGilvray, Mo., 270 S.W.2d 793, 797–798 (1); Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316, 323(16); Payne v. Smith, Mo., 322 S.W.2d 764, 767(1); Brooks v. Stewart, Mo., 335 S.W.2d 104, 105, 81 A.L.R.2d 508; Johnston v. Owings, Mo.App., 254 S.W.2d 993, 995(1); Henry v. First Nat. Bank of Kansas City, 232 Mo.App. 1071, 115 S.W.2d 121, 127(1).

3. Herr v. Ruprecht, Mo., 331 S.W.2d 642, 647(2); Page v. Hamilton, Mo., 329 S.W.2d 758, 762(5); Evett v. Corbin, Mo., 305 S.W.2d 469, 471; Asher v. Griffin, Mo.App., 342 S.W.2d 255, 257; Fowler v. Gulf, Mobile & Ohio R. Co., Mo.App., 286 S.W.2d 404, 408(1); Edelen v. St. Louis Public Service Co., Mo.App., 279 S.W.2d 188, 191(4); Smoot v. Fischer, Mo.App., 248 S.W.2d 38, 42(8); Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782, 785–786(3, 4).

4. Gruetzemacher v. Billings, Mo., 348 S.W.2d 952, 957(5); Harbourn v. Katz Drug Co., Mo., 318 S.W.2d 226, 228(1), 74 A.L.R.2d 938; Wilkins v. Allied Stores of Missouri, Mo., 308 S.W.2d 623, 628; Dixon v. General Grocery Co., Mo., 293 S.W.2d 415, 418; Anderson v. Kansas City Baseball Club, Mo., 231 S.W.2d 170, 171; Hudson v. Kansas City Baseball Club, 349 Mo. 1215, 164 S.W.2d 318, 320(3), 142 A.L.R. 858; Willis v. Rivermines I. G. A. Supermarket, Mo.App., 350 S.W.2d 437, 440(1); Heidt v. Lauless, Mo.App., 348 S.W.2d 599, 601(1); Hammontree v. Edison Bros. Stores, Mo. App., 270 S.W.2d 117, 125(6); McElroy v. S. S. Kresge Co., Mo.App., 244 S.W.2d 425, 428.

harm to business invitees caused by a natural or artificial condition on the inviter's premises "if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (1) to make the condition reasonably safe, or (2) to give a warning adequate to enable them to avoid the harm . . ." And, it is settled beyond doubt by a plethora of authority[5] that the basis of an inviter's liability, under the foregoing principle, is *his superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know.* Therefore, where the danger is or should be as well known to the invitee as to the inviter, the latter has no duty to warn of such danger[6] and no liability for injury to the invitee resulting therefrom.[7] " 'The invitor is not an insurer of the safety of the invitee; neither is the invitee protected against all hazard, nor relieved of all duty to himself for his own safety. And to the extent that the duty of self-protection rests upon the invitee, the duty of the invitor to protect is reduced. The extent of these relative duties depends upon many factors involving the capacity and opportunity of the invitor to protect the invitee and the capacity and opportunity of the invitee to protect himself.' " Gruetzemacher v. Billings, Mo., 348 S.W.2d 952, 958; Hudson v. Kansas City Baseball Club, 349 Mo. 1215, 164 S.W.2d 318, 321, 142 A.L.R. 858; Hammontree v. Edison Bros. Stores, Inc., Mo.App., 270 S.W.2d 117, 125.

■ In the case at bar, plaintiff charges that "a dangerous condition" was created by removal of the bracing. True, the resulting condition was "dangerous" in the philosophical sense that, if the bracing had not been removed, none of the cartons could have tilted or fallen—and, neither could they have been unloaded. But something more than mere removal of the bracing was required to render the situation sufficiently dangerous to result in injury to plaintiff, for none of the cartons tilted or fell upon removal of the bracing, nor until three of the cartons had been unloaded from the trailer and the fourth carton was being moved. However, it would be vain and useless to indulge in idle speculation (and, indeed, we could do no more than that) as to the precise nature and extent of danger created by removal of the bracing or as to the "something" [cf. Coble v. St. Louis-San Francisco Ry. Co., Mo., 38 S.W.2d 1031; Zimmerman v. Young, Mo.App., 280 S.W.2d 457, 461] which trig-

**5.** Gruetzemacher v. Billings, supra, 348 S.W.2d loc. cit. 957; Brown v. Kroger Co., Mo., 344 S.W.2d 80, 83(4); Harbourn v. Katz Drug Co., supra, 318 S.W.2d loc. cit. 229(2); Ostresh v. Illinois Terminal R. Co., Mo., 313 S.W.2d 19, 22; Howard v. Johnoff Restaurant Co., Mo., 312 S.W.2d 55, 57(4); Stafford v. Fred Wolferman, Inc., Mo., 307 S.W.2d 468, 473(3); Dixon v. General Grocery Co., supra, 293 S.W.2d loc. cit. 419; Summa v. Morgan Real Estate Co., 350 Mo. 205, 165 S.W.2d 390, 393(1); Paubel v. Hitz, 339 Mo. 274, 96 S.W.2d 369, 371; Dye v. Peterson, Mo.App., 350 S.W.2d 272, 275; Bullock v. Sklar, Mo.App., 349 S.W.2d 381, 384(1); Miller v. Cracchiola, Mo.App., 321 S.W.2d 18, 21(2); Adkins v. Sutherland Lumber Co., Mo.App., 307 S.W.2d 17, 21(4); Meyer v. St. Louis Public Service Co., 241 Mo.App. 1057, 253 S.W.2d 525, 531; Small v. Ralston-Purina Co., Mo.App., 202 S.W.2d 533, 538.

**6.** In addition to the Brown, Harbourn, Howard, Stafford and Heidt cases, supra, see Harper v. First Nat. Bank of Kansas City, Mo., 196 S.W.2d 265, 268(3); Hudson v. Kansas City Baseball Club, supra, 164 S.W.2d loc. cit. 323(8); Zimmerman v. Young, Mo.App., 280 S.W.2d 457, 461(8).

**7.** In addition to the Ostresh, Howard, Wilkins, Stafford, Summa, Paubel, Dye and Meyer cases, supra, see Schmoll v. National Shirt Shops of Missouri, 354 Mo. 1164, 193 S.W.2d 605, 607, and Hoffman v. Kroger Co., Mo.App., 340 S.W.2d 152 155(5).

gered the tilting of the last two cartons. Whatever the danger initially engendered by removal of the bracing, plaintiff actively participated in creating it. Whatever the danger thereafter developed in the course of unloading three cartons and moving the fourth one, plaintiff no less actively participated in fashioning it. Whatever the situation may have been at any given moment from the time plaintiff and defendant Stagner together climbed into the trailer and began to remove the bracing until plaintiff was injured, it was, or in the exercise of ordinary care could and should have been, as clearly and openly visible to one as to the other.[8] And, whatever the risk of harm may have been at any given moment during the same period, it was, or in the exercise of ordinary care certainly could and should have been, as plainly and readily apparent to plaintiff, an adult construction superintendent experienced in handling building materials and (as his testimony disclosed) in unloading heavy freight from Dodds' trucks, as it was to Stagner. In these circumstances, no duty to warn plaintiff arose and actionable negligence on the part of defendants was not shown. See again the cases collected marginally in notes 6 and 7.

Furthermore, *even if* (contrary to our conclusion) defendants were charged with a duty to warn, there was no evidence to justify submission of a breach of that duty. Taking plaintiff's testimony as a whole, as we must do [cf. Batson v. Ormsbee, Mo.App., 304 S.W.2d 680, 682, and cases there cited], it is clear that his knowledge, or more properly stated his lack of knowledge, concerning this subject at the time of trial was summarized fairly at the close of his direct examination when, to the question "had he (Stagner) cautioned you when it (the bracing) was removed they (the cartons) might fall over?" plaintiff answered *"I don't remember,"* and to the further inquiry "had he warned you in any way because of their nature, because of their weight, they might tip or fall?" plaintiff responded *"I don't remember whether he did or not."* By the time plaintiff's witnesses Grayson and Gregory had reached the trailer, plaintiff and Stagner already had removed the bracing and had thrown it outside the trailer, so these witnesses could not have known whether a warning had been given *before* they arrived. For that matter, their examination did not show whether, *after* they reached the scene, Stagner gave *plaintiff any warning of danger or unreasonable risk of harm.* E. g., the question to Gregory, wide of the mark, "at any time did you hear Mr. Stagner, the driver, caution you or Mr. Grayson or Mr. Haire (plaintiff) *in regard to how to handle this material?"* elicited a simple "no, sir," while the next question, limited in scope, "did he warn *you (Gregory)* of any dangerous conditions that might exist as a result of this material being unbraced?" drew the meaningless response *"I don't recall if he did."* When defendant Stagner was asked whether he had given "any warn-

---

8. Contrast Behnke v. City of Moberly, Mo.App., 243 S.W.2d 549 (the only case cited in instant plaintiff's brief on the duty owing to an invitee), where plaintiff taxied his airplane into a muddy trench contiguous to a newly-constructed concrete parking apron at defendant's airport, *when the entire area was covered with snow, plaintiff had no knowledge of the trench,* and defendant had placed no markers and had given no warning. And Reed v. Swift & Co., Mo. App., 117 S.W.2d 636, where plaintiff, an employee of a market assisting in unloading meat from defendant's delivery truck, stepped through a hole in the rotten wood floor of the truck, *when the floor was covered and concealed by papers and plaintiff had no knowledge, and was given no warning, of its condition.* And Ridenour v. International Harvester Co. of America, Mo.App., 205 S.W. 881, in which plaintiff, the driver of a transfer wagon, was injured by a heavy box falling on his leg, *where he was in a stooping position, engaged in other work, and wholly unaware of danger* when defendant's employee loaded the box in an insecure, unstable and unusual position on an inclined wagon bed and then negligently jarred the bed by running a hand truck over it.

ing or caution to any of the men working there," the by-now-familiar theme was repeated in the answer, *"I don't recall."* Disclaimers of recollection and knowledge are an unsatisfactory and unacceptable substitute for evidence; and, in this instance, they would not have permitted a finding that defendants did not warn plaintiff, *even if* there had been such duty. Inman's Adm'x. v. United Rys. Co. of St. Louis, 157 Mo. App. 171, 137 °S.W. 3, 4(1); Globe Automatic Sprinkler Co. v. Laclede Packing Co., Mo.App., 93 S.W.2d 1053, 1056(1); Little v. Manufacturers Ry. Co., Mo.App., 123 S.W.2d 220, 222(2); Reid v. Holcomb, 63 Cal.App. 89, 218 P. 76, 78(3).

■ Where, as here, the facts have been developed fully, all available witnesses on the material issues have testified, and it is clear that plaintiff is not entitled to recover [Wright v. Kansas City Structural Steel Co., 236 Mo.App. 872, 157 S.W.2d 582, 592 (12); Lappin v. St. Louis Nat. League Baseball Club, Mo.App., 33 S.W.2d 1025, 1027–1028(4)], it becomes our plain duty to dispose of the case finally. Rule 83.13(c), V.A.M.R.; V.A.M.S. § 512.160(3); Shofler v. Jordan, Mo.App., 284 S.W.2d 612, 616 (10); Krueger v. Elder Mfg. Co., Mo.App., 260 S.W.2d 349, 353(5); Trantham v. Gullic, Mo.App., 201 S.W.2d 522, 530(11). Accordingly, the judgment for plaintiff is reversed without remand.

RUARK, P. J., and McDOWELL, J., concur.