OFFICE OF THE ATTORNEY GENERAL

State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------

```
      OPINION          :
                        :  No. 88-903
        of              :
                        :  MARCH 9, 1989
 JOHN K. VAN DE KAMP    :
   Attorney General     :
                        :
 RODNEY O. LILYQUIST    :
Deputy Attorney General :
```

--------------------------------------------------------------------


        THE HONORABLE WILLIAM H. IVERS, DIRECTOR, DEPARTMENT
OF BOATING AND WATERWAYS, has requested an opinion on the
following question:

        What is the extent of the concurrent jurisdiction
authorized under the Colorado River Crime Enforcement Compact?

                            CONCLUSION

        The extent of the concurrent jurisdiction authorized
under the Colorado River Crime Enforcement Compact is that with
respect to acts taking place on the boundary waters between
California and Arizona, which acts constitute crimes under the
laws of each state, the officers and courts of one state may
apply and enforce the laws of that state without regard to the
actual location of the boundary.

                            ANALYSIS

        Section 2 of article III of the Constitution provides
in part:  "The boundaries of the state are those stated in the
Constitution of 1849 as modified pursuant to statute."  With
respect to the boundary between California and Arizona, the
Legislature has enacted Government Code sections 175 and 176,
modifying the boundary described in the Constitution of 1849.
(See River Farms, Inc. v. Superior Court (1967) 252 Cal.App.2d
604, 606.)  The statutes ratify and enact the Colorado River
Boundary Compact, which was also adopted in Arizona (Ariz. Rev.
Stats. § 41-522).

        Very little of the boundary between California and
Arizona is not covered by water.  Most of the boundary is at or

near the center of the Colorado River and its lakes.  Because of the difficulty in sighting the boundary on the water, each state has encountered problems in enforcing its criminal laws, principally boating regulations, over activities occurring on the river. In 1985, California and Arizona adopted the Colorado River Crime Enforcement Compact ("Compact") to address this mutual concern.

The question presented for resolution requires an examination of the provisions of the Compact.  What criminal activities are covered, what geographical areas are covered, and what is the practical effect of having concurrent jurisdiction under the Compact?  We conclude that concurrent jurisdiction is authorized under the Compact only with respect to activities occurring on the boundary waters and which constitute crimes under the laws of each state.  With respect to such activities, courts and law enforcement officers may treat the boundary between the states as though it were located at the opposite shore.

The Compact has been enacted in California as Penal Code sections 853.1 and 853.2.[1]  Section 853.1 states:

"(a) Pursuant to the authority vested in this state by Section 112 of Title 4 of the United States Code, the Legislature of the State of California hereby ratifies the Colorado River Crime Enforcement Compact as set forth in Section 853.2.

"(b) The purpose of this compact is to promote the interests of justice with regard to crimes committed on the Colorado River by avoiding jurisdictional issues as to whether a criminal act sought to be prosecuted was committed on one side or the other of the exact boundary of the channel, and thus avoiding the risk that an offender may go free on technical grounds because neither state is able to establish that the offense was committed within its boundaries.

"(c) The compact shall become operative when ratified by law in the State of Arizona; and shall remain in full force and effect so long as the provisions of this compact, as ratified by the State of Arizona, remain substantively the same as the provisions of this compact, as ratified by this section.  This compact may be amended in the same manner as is required for it to be ratified to become operative."

---

1.  All references hereafter to the Penal Code are by section number only.

Sections 853.2 provides:

"(a) All courts and officers now or hereafter having and exercising jurisdiction in any county which is now or may hereafter be formed in any part of this state bordering upon the Colorado River, or any lake formed by, or which is part of, the Colorado River, shall have and exercise jurisdiction in all criminal cases upon those waters concurrently with the courts of and officers of the State of Arizona, so far and to the extent that any of these bodies of water form a common boundary between this state and the State of Arizona.

"(b) This section applies only to those crimes which are established in common between the States of Arizona and California; and an acquittal or conviction and sentence by one state shall bar prosecution for the same act or omission by the other.

"(c) This compact shall not be construed to bar the enforcement of the penal laws of either state not established in common with the other, provided that the act or omission proscribed occurs on that state's side of the river channel boundary."

The Compact has been enacted in Arizona as follows:

"A. If conduct is prohibited by two adjoining party states, courts and law enforcement officers in either state who have jurisdiction over criminal offenses committed in a county where the Colorado river forms a common interstate boundary have concurrent jurisdiction to arrest, prosecute and try offenders for the prohibited conduct committed anywhere on the boundary water between the two states.

"B. This compact does not authorize:

"1. Prosecution of any person for conduct which is lawful in the state where it was committed.

"2. Any conduct prohibited by any party state."

(Ariz. Rev. Stats. § 37-620.11.)

The Arizona Legislature made the following finding in adopting the Compact:

"The legislature finds that law enforcement has been impaired in sections of the Colorado river forming an interstate boundary because of difficulty in

determining precisely where a criminal act was committed." (Ariz. Stats. 1985, ch. 85, § 1.)[2/]

## 1. Crimes Established in Common

We first address the issue of the types of criminal activities covered by the Compact for which concurrent jurisdiction is authorized. We conclude that the activities must constitute crimes under the laws of both California and Arizona.

Subdivision (b) of section 853.2 expressly states: "This section applies only to those crimes which are established in common between the States of Arizona and California." The Arizona law similarly is limited to "conduct . . . prohibited by two adjoining party states" and specifically excludes "conduct which is lawful in the state where it was committed." (Ariz. Rev. Stats. § 37.620.11.)

A well-recognized principle of statutory construction is that "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect." (Moore v. Panish (1982) 32 Cal.3d 535, 541.) "Words must be construed in context, and statutes must be harmonize, both internally and with each other, to the extent possible." (California Mfrs. Assn. v. Public Utilities Com. (1979) 24 Cal.3d 836, 844.) In determining legislative intent, "we look first to the words of the statute, giving them their usual and ordinary meaning." (Committee of Seven Thousand v. Superior Court (1988) 45 Cal.3d 491, 501.)

The phrase "in common" ordinarily means "that is shared, experienced, or possessed together or equally." (Webster's New Internat. Dict. (3d ed. 1971) p. 458.) Has California and Arizona "shared equally" by defining a particular act or omission in question as a crime?

---

2. For purposes of the question presented, we may assume that the laws of California and Arizona are substantially the same with respect to the Compact and that Congress has given its consent to the Compact. In this latter regard, subdivision (a) of section 112 of Title 4 of the United States Code provides:

"The consent of Congress is hereby given to any two or more States to enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies, and to establish such agencies, joint or otherwise, as they may deem desirable for making effective such agreements and compacts."

Reading section 853.2 in light of the Arizona law, we believe that the phrase "crimes which are established in common" refers to any activity that constitutes a crime under the penal statutes of each state. Minor variations may describe the elements of the offenses in the statutes of the two states, and the penalties may not be identical. The key focus is whether the activity constitutes criminal activity as defined by California and Arizona law.[3]

Such construction of the Compact effectuates its purpose of "avoiding the risk that an offender may go free on technical grounds" (§ 853.1, subd. (b)) "because of difficulty in determining precisely where a criminal act was committed" (Ariz. Stats. 1985, ch. 85, § 1). It is "fundamental . . . that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.]" ( People v. Woodhead (1987) 43 Cal.3d 1002, 1007.)

What is necessary, therefore, is a knowledge of the criminal statutes of California and Arizona. A violation of a penal law unique to one state would not be subject to concurrent jurisdiction under the Compact. If the two states proscribe the same general conduct but in slightly different ways, it must be determined that the particular acts in question constitute the offense prohibited by the laws of each.

Our construction of the Compact is consistent with the interpretation given to similar agreements of various other states regarding their boundary waters. (See Nielsen v. Oregon (1909) 212 U.S. 315, 321 [53 L.Ed. 528, 29 S.Ct. 383]; Smoot v. Fischer (Mo.App. 1952) 248 S.W.2d 38, 41; Nicoulin v. O'Brien (Ky.App. 1916) 189 S.W. 724, 728.)

Several situations have been presented to us for consideration with respect to the phrase "crimes which are established in common." For example, we are informed that Arizona law requires life jackets to be worn by children under 12 years of age, while California law does not. The Arizona law would constitute a statute unique to one state and thus not subject to concurrent jurisdiction under the Compact.

Both states require vessel registration, although in California it is necessary only for boats that are "using the waters or on the waters of this state." (Veh. Code, § 9850.) If a vessel is operated on the Colorado River without being registered, the lack of registration would be a criminal offense

---

3. Once it is determined that the act or omission is defined as a crime in each state, "an acquittal or conviction and sentence by one state shall bar prosecution for the same act or omission by the other." (§ 853.2, subd. (b).)

under both California and Arizona law and subject to concurrent jurisdiction.

On the other hand, the registration number for certain vessels must be placed in one location under California law and in a different location under Arizona law. Because of this difference, the same activity (placement of the number) may constitute a criminal offense in one state but not in the other. In such situation the actual location of the boundary between the two states must be observed in enforcing the laws of each state.

## 2. Geographical Areas

The second issue presented by the question concerns the geographical areas covered by the Compact. We conclude that concurrent jurisdiction is authorized only for criminal activities occurring on the boundary waters between the two states.

Subdivision (b) of section 853.1 declares that the purpose of the Legislature "is to promote the interests of justice with regard to crimes committed on the Colorado River." Subdivision (a) of section 853.2 grants concurrent jurisdiction with respect to "the Colorado River, or any lake formed by, or which is a part of, the Colorado River . . . so far and to the extent that any of these bodies of water form a common boundary between this state and the State of Arizona."

Arizona law is similar to California law in requiring that the criminal conduct occur on the waters of the Colorado River for concurrent jurisdiction to apply. It confers "jurisdiction on the Colorado River" with respect to "prohibited conduct committed . . . on the boundary water between the two states" (Ariz. Rev. Stats. § 37-620.11) and was adopted to facilitate law enforcement "in sections of the Colorado River because of difficulty in determining precisely where a criminal act was committed" (Ariz. Stats. 1985, ch. 85, § 1).

We find support for our construction of the Compact from the judicial interpretations given to similar agreements of other states. For example, in Smoot v. Fischer, supra, 248 S.W.2d 38, 42, the court recognized and applied:

"   . . .  the well-settled rule as announced in numerous authorities that the grant of concurrent jurisdiction relates only to things which are in some legitimate sense to be regarded as on the water (a distinction we have already pointed out), and does not extend to permanent structures attached to the river bed or the banks, and therefore within the boundaries of one or the other of the adjoining states. In other words, it is the water itself, and the use of it for

navigation, interstate traffic, and the like, with which the doctrine of concurrent jurisdiction is concerned, and not the land under the water, or things of a permanent nature erected in or over the water. Whenever such physical objects themselves, or rights incident thereto, are directly involved in the controversy, they are under the exclusive jurisdiction of the state within whose boundaries the objects are located."

As Justice Holmes stated in Wedding v. Meyler (1904) 192 U.S. 573, 585 [48 L.Ed. 570, 24 S.Ct. 322]: " . . . the concurrent jurisdiction given is jurisdiction 'on' the river, and does not extend to permanent structures attached to the river bed and within the boundary of one or the other state." (See also State v. Moyers (Iowa 1912) 136 N.W. 897, 899; Roberts v. Fullerton (Wis. 1903) 93 N.W. 1111, 1113; State v. Faudre (W.Va. 1903) 46 S.E. 269, 273.)

Accordingly, the Compact has no application to acts taking place beyond the boundary waters between California and Arizona. It is not concerned with conduct occurring on the banks of the river or shores of the lakes. Its scope is limited to activities taking place on the boundary waters due to the difficulties of determining where precisely the boundary is located on the river.

3. Concurrent Jurisdiction

The third issue presented by the question concerns the effect of having "concurrent jurisdiction" as authorized by the Compact. How is this type of jurisdiction distinguished from the situation where the Compact is inapplicable?

The term "concurrent" ordinarily means "occurring, arising, or operating at the same time often in relationship, conjunction, association, or cooperation" and "joint and equal in authority . . . having authority over the same subject matters . . . operating simultaneously." (Webster's, supra, p. 472.) The term "jurisdiction" normally refers to "the legal power, right, or authority to hear and determine a cause" and "the limits or territory within which any particular power may be exercised." (Webster's, supra, p. 1227.)

Subdivision (a) of section 853.2 grants concurrent jurisdiction to "courts and officers . . . exercising jurisdiction in any county . . . bordering upon the Colorado River . . . in all criminal cases upon those waters . . . ." Subdivision (b) of section 853.1 describes the purpose of the Compact as "avoiding jurisdictional issues as to whether a criminal act sought to be prosecuted was committed on one side or the other of the exact boundary of the channel."

As previously discussed, we are to interpret statutory language by adopting the ordinary and usual definitions of the words used with the primary goal of effectuating the Legislature's intent. It is apparent that the Compact uses the term "concurrent jurisdiction" in the sense that the power of both states is extended over the entire limits of the boundary waters.

California courts and officers have equal authority with Arizona courts and officers to administer justice with respect to certain criminal activities occurring on the boundary waters. A California peace officer, for example, may exercise whatever "right, power, or authority" he or she has under California law to arrest and take into custody a person whose act or omission occurring on the water constitutes a crime in both California and Arizona -- without regard to where the boundary between the two states is located. A California officer would enforce California law, using California procedures and the California court system to administer justice.

An Arizona peace officer would similarly enforce Arizona law, using Arizona procedures and the Arizona court system to administer justice, acting "side by side" and "having equal authority" with California officers over the boundary waters.

Under the provisions of the Compact, then, one state is not attempting to enforce the statutes enacted by the other state. The officers do not wear two uniforms. Concurrent jurisdiction grants joint and equal authority to the courts and officers of both states to exercise whatever powers they have under their own laws without regard to where the boundary is precisely located. The Compact does not confer additional powers; the peace officers, for example, are not given greater powers of arrest than they have within their own state. The Compact only seeks to preclude the criminal offender from claiming that the offense took place in the other state.

The provisions of the Compact do not authorize the officers of one state to enter upon the lands of the other state. All references to the territory covered by the terms of the Compact concern the boundary waters. Arizona officers enforcing Arizona law in the courts of California would not serve the express purposes of the Compact. Similarly California officers are not empowered by the Compact to enter upon the lands of Arizona to arrest or take into custody a person even where the person has violated a law in common upon the boundary waters.

We recognize that it may be difficult at times to enforce "on the waters" the criminal laws of one state without pursuing an offender onto the lands of the other state. Although the Compact does not address this particular enforcement problem,

other agreements do.  Both California and Arizona, for example, have adopted the Uniform Act on Fresh Pursuit (§§ 852-852.4; Ariz. Rev. Stats. §§ 13-3831 - 13-3834) which allows a peace officer to go into another state to pursue a criminal offender under specified conditions and procedures.  Accordingly, just as any other criminal offense committed near the boundary between California and Arizona might produce enforcement difficulties, a criminal act occurring on the Colorado River would be subject to such enforcement agreements entered into by the two states.

Concurrent jurisdiction as authorized by the Compact is limited to crimes established in common taking place on the boundary waters.  Such circumstances are to be distinguished from the situation where the criminal acts are violating the penal laws of only one state.  In the latter situation, the precise boundary between California and Arizona must be treated as governing the jurisdiction to act -- just as it is on land.  The rights, powers and authority of the courts and officers of one state do not extend in such circumstances beyond its legal boundaries under the Compact's provisions.  The Compact does not authorize the officers of one state to enter upon the lands or waters (even the waters of the Colorado River) of the other state when dealing with crimes not established in common.  As previously indicated, however, other agreements would cover and control whether officers observing a criminal offence under their own laws on their side of the river may go onto the other side of the river to make the arrest and take the person into custody.

Our construction of the Compact adopts the approach taken by courts interpreting similar agreements of other states. (See Nicoulin v. O'Brien, supra, 189 S.W. 724, 727;  Ex Parte Desjeiro (C.C.D.Ore. 1907) 152 F. 1004, 1006;  Roberts v. Fullerton, supra, 93 N.W. 1111, 1113; J. S. Keator Lumber Co. v. St. Croix Boom Corp. (1888) 72 Wis. 62 [38 N.W. 529, 542].)  In Wedding v. Meyler, supra, 192 U.S. 573, 584, the court stated with respect to the concurrent jurisdiction authorized on the Ohio River:

"Concurrent jurisdiction, properly so called, on rivers, is familiar to our legislation, and means the jurisdiction of two powers over one and the same place. There is no reason to give an unusual meaning to the phrase.  [Citations.]

" . . . But jurisdiction, whatever else or more it may mean, is jurisdictio, in its popular sense of authority to apply the law to the acts of men. [Citations.]  What the Virginia compact most certainly conferred on the states north of the Ohio was the right to administer the law below low-water mark on the river . . . ."

In <u>Nielsen</u> v. <u>Oregon</u>, <u>supra</u>, 212 U.S. 315, 320-321, the court declared with respect to the concurrent jurisdiction of Oregon and Washington over the Columbia River:

"Undoubtedly, one purpose, perhaps the primary purpose, in the grant of concurrent jurisdiction, was to avoid any nice question as to whether a criminal act sought to be prosecuted was committed on one side or the other of the exact boundary in the channel, that boundary sometimes changing by reason of the shifting of the channel. Where an act is <u>malum in se</u>, prohibited and punishable by the laws of both states, the one first acquiring jurisdiction of the person may prosecute the offense, and its judgment is a finality in both states, so that one convicted or acquitted in the courts of the one state cannot be prosecuted for the same offense in the courts of the other. . . .

"The present case is not one of the prosecution for an offense <u>malum in se</u>, but for one simply <u>malum prohibitum</u>. Doubtless the same rule would apply if the act were prohibited by each state separately; but where, as here, the act is prohibited by one state and in terms authorized by the other, can the one state which prohibits prosecute and punish for the act done within the territorial limits of the other? Obviously, the grant of concurrent jurisdiction may bring up, from time to time, many and some curious and difficult questions, so we promptly confine ourselves to the precise question presented. The plaintiff in error was within the limits of the state of Washington, doing an act which that state in terms authorized and gave him a license to do. Can the state of Oregon, by virtue of its concurrent jurisdiction, disregard that authority, practically override the legislation of Washington, and punish a man for doing within the territorial limits of Washington an act which that state had specially authorized him to do? We are of opinion that it cannot. It is not at all impossible that, in some instances, the interests of the two states may be different. Certainly, as appears in the present case, the opinion of the legislatures of the two states is different, and the one state cannot enforce its opinion against that of the other; at least, as to an act done within the limits of that other state."

In <u>State</u> v. <u>Moyers</u>, <u>supra</u>, 136 N.W. 897, 898-899, the court noted that the purpose of authorizing concurrent jurisdiction with respect to a river boundary was "to avoid the difficult question of whether a criminal act was committed on one side or the other of the boundary line," and concluded that:

" . . . an officer of the state bounded by such river may make such arrests for such criminal acts on any portion of the river so far as it constitutes the common boundary, that the courts in which such offenders are brought may try them for the offenses committed as though committed within the limits of the state regardless of whether the place of commission was on one side or the other of the boundary line, and that they may be punished in accordance with the laws of the state in which they are thus put on trial."

In Smoot v. Fischer, supra, 248 S.W.2d 38, 41, the court declared:

"In situations where a watercourse forms a common boundary between two states, the question of jurisdiction over such watercourse and things transpiring upon it has always been a matter of considerable concern. Generally speaking, the jurisdiction of a state is merely coextensive with its boundaries, so that where a stream forms the boundary between two states, neither would have jurisdiction beyond the center of the stream, or beyond whatever may constitute the actual dividing line, in the absence of some lawful agreement or provision extending each states's jurisdiction over the entire stream. But because of the practical difficulty to be encountered in determining whether a particular thing in controversy occurred on one side or the other of the exact dividing line between the two states, it has been found expedient to extend each states's jurisdiction over the whole of such a stream; and out of all this has evolved the concept of concurrent jurisdiction on the part of adjoining states with respect to a stream or watercourse which forms the common boundary between them.

" . . . . . . . . . . . . . . . . . . . . . . .

"It is to be understood that in conferring concurrent jurisdiction on this state as to acts or transactions occurring on the Mississippi, it was not intended that there should be concurrent sovereignty or dominion on the river. On the contrary, in the case of matters not included in the proper concept of concurrent jurisdiction, each of the adjoining states retains its exclusive control up to the limit of its actual boundary, entirely free from interference by the other. The term 'jurisdiction' relates to matters at least in some way connected with the use of the water for navigable purposes or in some legitimate sense to be regarded as on the water; and what is meant by the

11.                                                    88-903

grant of concurrent jurisdiction is merely that transactions occurring anywhere on the water, which are the proper subject of concurrent jurisdiction, may lawfully be dealt with by the courts of either of the adjoining states according to its own laws as fully and completely as those occurring elsewhere within its borders.  In other words, the state acquiring jurisdiction acts by, and is limited to the enforcement of, its own laws and not the laws of the adjoining state . . . ."

In answer to the question presented, therefore, we conclude that the extent of the concurrent jurisdiction authorized under the Compact is that with respect to acts taking place on the boundary waters of the Colorado River and its lakes, which acts constitute crimes under the laws of both California and Arizona, the officers and courts of one state may apply and enforce the laws of that state without regard to the actual location of the boundary.

* * * * *